IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 3, 2015

## LOUIS DANCY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 0806462     J. Robert Carter, Jr., Judge**

_____

**No. W2014-00330-CCA-R3-PC  -  Filed March 16, 2015**

_____

The Petitioner, Louis Dancy, appeals the post-conviction court's denial of relief from his conviction for second degree murder. On appeal, the Petitioner argues that he received ineffective assistance of counsel at trial. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and JOHN EVERETT WILLIAMS, JJ., joined.

Ruchee J. Patel, Memphis, Tennessee, for the Petitioner, Louis Dancy.

Robert E. Cooper, Attorney General and Reporter; Ahmed A. Safeeullah; Assistant Attorney General; Amy P. Weirich, District Attorney General; and Megan Fowler, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

This appeal stems from the shooting death of the victim, Charles Williams, on April 4, 2008. The Petitioner was subsequently indicted by the Shelby County Grand Jury for second degree murder in relation to this incident. This court summarized the underlying facts of the Petitioner's case on direct appeal as follows:

> At approximately 10:40 a.m. on April 4, 2008, Officer Timeca Johnson of the Memphis Police Department was dispatched to an assault call where shots had been fired in front of Hattie's Grocery on South Lauderdale Street. Because she was passing the area as the crime occurred,

she was able to respond within a minute. When Officer Johnson arrived on the scene, she saw Charles Williams, the victim, lying face down on the walkway in front of the business, and six or seven people were standing around. The victim was alive but unresponsive, so Officer Johnson rolled him over and determined that he had been shot in the pelvic area. She did not find any possessions on the victim. She assisted him until the fire department arrived.

Officer Johnson then interviewed witnesses and reviewed video footage from the surveillance cameras at Hattie's Grocery. She noted that some of the individuals in the video were still on the scene, and the video also showed [the Petitioner] and Laquisha Cosey at the scene. Officer Johnson later located a shell casing near her patrol car. She testified that there was a lot of gang activity in the area of the shooting.

Rachel Montgomery, the victim's aunt and guardian, testified that she learned of the shooting on her way to church and went to the scene. The victim's mother was there when Ms. Montgomery arrived, and emergency personnel were still working on the victim. Ms. Montgomery followed the ambulance to the Regional Medical Center where the victim remained for two weeks before he passed away. Ms. Montgomery explained that the victim was supposed to attend church with her that Sunday morning but stayed home because he had a headache. Ms. Montgomery later learned that the victim had walked to the store with Nakiel Addison to buy some cigarettes and pizza. She said that the victim also hung out with "Quick" Addison.

Dr. Marco Ross performed an autopsy on the victim. He determined that the victim had "sustained a gunshot wound to the abdomen for which he had multiple surgeries performed and had multiple complications resulting from the initial gunshot wound, that were the cause of his death." Dr. Ross testified that the victim developed an infection that became septic due to the injury to his intestines. The loss of blood also caused the victim to sustain brain damage.

Eleven-year-old Nakiel Addison testified that he was in front of Hattie's Grocery on April [4], 2008. He had walked to the store to get something to eat, but it was closed, and he waited there to see if it would open. Nakiel testified that the victim walked up and sat down. He knew the victim who was friends with his cousin, "Quick" Addison. Nakiel and

the victim were talking and laughing with another friend when a woman walked up to the store and pulled on the door. She then asked Williams if they were laughing at her, and he responded that they were not. Nakiel saw the woman walk away and point to a man across the street. Nakiel testified that the man then walked up to the store and shot the victim. Nakiel ran home when he saw the gun and told his mother what had happened. While he was running, Nakiel saw the shooter run away as well.

Sergeant Steven Roach of the Felony Assault Unit drove to the Med with Detective Weddle on April 6, 2008, to check on the victim. He received the video and a statement from the store owner and reviewed the video. He also interviewed Quincy "Quick" Addison, Nakiel Addison, and Laquisha Cosey, who was [the Petitioner]'s girlfriend. Sergeant Roach testified that [the Petitioner] was taken into custody in Cleveland, Mississippi, and Sergeant Roach drove there on April 28, 2008, and picked him up. [The Petitioner] then signed a waiver and gave a statement. Sergeant Roach testified that [the Petitioner] was very cooperative and admitted to the shooting. [The Petitioner] said that no one else was involved. [The Petitioner] told Sergeant Roach that he had followed Ms. Cosey to the store where she was arguing with the victim. He said that the victim "kept hollering get your fat ass off my block," and Ms. Cosey said that she was tired of "these folks" constantly "picking" on her.

[The Petitioner] said that he walked up and saw the victim "grabbing on his pants acting like he had a gun under his shirt," and the victim said, "[Y]ou ain't the only one who got a gun." [The Petitioner] told Detective Roach that he pulled a nine millimeter out of a black bag and fired one round. He then ran down an alley and tossed the gun. [The Petitioner] said that he ran to "Lemonyne Owen Park, I waited and laid low for a couple of days until I heard a partner say he was going to Cleveland, Mississippi."

[The Petitioner] told Sergeant Roach that he never saw a gun on the victim at the time of the shooting, but the victim and "Quick" Addison had robbed and shot at him in the past. He also said that they were known gang members and that police had taken drugs from them. [The Petitioner] also said that he had called police on the victim and Addison in the past. Sergeant Roach testified that he looked but did not find any police reports on these incidents. [The Petitioner] told Sergeant Roach that [the Petitioner] had a gun that day because he was going to his grandmother's house and had to "pass by where the 20/20 mob hang at." He was aware

-3-

that they had "jumped" his brother-in-law, and he knew that he would be next.

State v. Louis Dancy, No. W2010-01986-CCA-R3-CD (Tenn. Crim. App. June 26, 2012).

Following deliberations, the jury convicted the Petitioner as charged, and he received a sentence of 18 years and six months' confinement. Id. This court affirmed the Petitioner's conviction on appeal, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal. Id.; State v. Louis Dancy, No. W2010-01986-SC-R11-CD (Tenn. Oct. 18, 2012). On February 25, 2013, the Petitioner filed a timely pro se petition for post-conviction relief. On March 1, 2013, the post-conviction court appointed counsel to represent the Petitioner, and a hearing was held on December 13, 2013.

At the post-conviction hearing, the Petitioner testified that his family hired counsel to represent him at trial. Counsel provided the Petitioner with a discovery packet and reviewed the packet with him prior to trial. The Petitioner claimed, however, that several photographs of the victim that were introduced at trial were not included in the discovery materials he was provided, and he was "stunned" when he saw them at trial. The Petitioner testified that had he known about the pictures prior to trial, he "probably" would not have proceeded to trial.

With regard to counsel's defense strategy, the Petitioner testified that he "felt like [counsel] could have presented [the Petitioner's defense] a little differently." He asked counsel to call several witnesses at trial, including the landlord of a local apartment complex and a police officer that arrested the Petitioner on another occasion, because these witnesses could have testified about the victim's gang involvement. He believed the victim's gang affiliation was not adequately presented to the jury. The Petitioner claimed that counsel never explained to him why he did not call these witnesses. The Petitioner also complained that counsel did not call Tasha Shorter, Tasha Ward, Laquisha Cosey,[1] and a woman by the name of Lana. He recalled that counsel explained that it would not be in the Petitioner's best interest to call these witnesses because they could bring up the Petitioner's past criminal history and prior conflicts with the victim. The Petitioner testified that he "agreed" with counsel's decision not to call these witnesses because he "felt like [counsel] kn[ew] better . . . what's best for [the Petitioner's case]."

---

[1] Throughout the post-conviction hearing transcript, the witness's name is spelled "Laquesha Cosie"; however, in this court's opinion on direct appeal, the witness's name is spelled "Laquisha Cosey." For consistency, we will utilize the spelling used by this court on direct appeal.

-4-

The Petitioner further testified that counsel did not effectively cross-examine the State's witness, Nakiel Addison.[2] Nakiel had provided a prior statement to the police indicating that he did not see the altercation between the Petitioner and the victim, but he testified to the contrary at trial. Additionally, the Petitioner believed that counsel should have challenged the Petitioner's indictment for second degree murder and requested an indictment for manslaughter. He also believed that counsel should have attempted to suppress the Petitioner's statement to police. The Petitioner testified that counsel did not "fully represent" him because his family owed counsel money. The Petitioner testified that he felt "forced" to proceed to trial. He recalled that counsel told him that the State offered him a plea agreement for 13 and a half years, and he told counsel he would accept the plea; however, when the Petitioner returned to court the next day, counsel informed him that the offer had been revoked.

Counsel testified that he was provided "open file" discovery by the State and was not surprised by any evidence presented by the State at trial. He viewed the victim's autopsy photographs prior to trial and did not believe they were "horrific." He noted that the Petitioner never disputed that he shot the victim. He agreed that the State introduced a surveillance video, which depicted the entire incident between the Petitioner and the victim and appeared to show the Petitioner communicating with another individual before approaching the victim from "a ways off" and shooting him. Counsel agreed that based upon the facts of the case, he was concerned that it could have been indicted as a first degree murder case.

Counsel testified that the Petitioner requested that counsel call several witnesses on the Petitioner's behalf at trial. Counsel evaluated all of those witnesses and discussed with the Petitioner the potential problems with calling them. Specifically, he recalled that he did not want to call Ms. Cosey, the Petitioner's girlfriend, because the State had copies of several letters written to her by the Petitioner in which he instructed her how to testify. With regard to the landlord, counsel noted that only the Petitioner could testify about the prior incident with the victim at his apartment complex unless the State challenged the Petitioner's testimony. Counsel did not call the Petitioner to testify at trial because the Petitioner's statement to police set out the Petitioner's "whole defense." He and the Petitioner discussed the concerns of him testifying, including subjecting him to cross-examination and opening the door to statements he made to his girlfriend, and decided it was not in his best interest. Counsel stated that the decision not to call any witnesses on behalf of the Petitioner was "absolutely" strategic. He further noted that he did not want

_____

[2] The Petitioner called this witness "Nichols" during his testimony at the post-conviction hearing; however, the post-conviction court clarified with the Petitioner and post-conviction counsel that the Petitioner was referring to Nakiel Addison [II, 16, 20].

-5-

to suppress the Petitioner's statement to police because it raised the Petitioner's theory of self-defense and brought up the victim's gang affiliation. Counsel believed he effectively impeached the State's witnesses, including Nakiel Addison, and painted the victim as a gang member.

Counsel testified that he received a formal plea offer from the State in writing for 15 years, but he never received an offer for 13 and a half years. He recalled that the Petitioner wanted a reduced charge of voluntary manslaughter or he wanted to proceed to trial. Counsel explained to the Petitioner that voluntary manslaughter was "never an option." On cross-examination, counsel could not recall whether he showed the autopsy photographs to the Petitioner. He explained that the autopsy photographs were not a "big issue" because they just showed that the victim died of a gunshot wound, which the Petitioner did not dispute. He also testified that the Petitioner never expressed his desire to have his statement to police suppressed. He reiterated that the State's decision to put the statement into evidence "sort of cured all our problems" because it fully presented the Petitioner's defense without subjecting the Petitioner to cross-examination. Counsel agreed that he did not present any witnesses on the Petitioner's behalf.

Muriel Malone, the assistant district attorney that prosecuted the Petitioner's case, testified that her office made a formal plea offer to the Petitioner for 15 years' confinement in exchange for his plea of guilty to second degree murder. She did not recall an offer for 13 and a half years and had no written notes about such an offer.

Following the hearing, the trial court took the matter under advisement and issued an order denying relief on January 24, 2014. It is from this order that the Petitioner now timely appeals.

## ANALYSIS

On appeal, the Petitioner argues that he received ineffective assistance of counsel. Specifically, he alleges that counsel failed to present any witnesses on his behalf, failed to provide him with all of the photographs in the discovery materials, and failed to promptly inform him of the State's plea offer for 13 and a half years.[3] The State responds that the post-conviction court properly denied relief because the Petitioner failed to establish ineffective assistance of counsel. We agree with the State.

---

[3] The Petitioner raised a number of other issues and grounds of ineffective assistance of counsel in his petition for post-conviction relief and at the post-conviction hearing. These issues were not raised on appeal. Accordingly, we do not address them.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks  omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove

either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn.1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688–89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn.2001) (quoting Goad, 938 S.W.2d at 369).

In the instant case, the Petitioner complains that counsel failed to call any witnesses on his behalf. He maintains that these witnesses could have established that the victim was a gang member and bolstered his theory of self-defense. The Petitioner also complains that counsel failed to provide him with all of the discovery materials and promptly inform him of a plea offer for 13 and a half years' confinement. He asserts that had counsel properly communicated with him regarding discovery and the plea offer, he would not have proceeded to trial. The post-conviction court found that the Petitioner failed to establish that counsel's performance was deficient in any regard. We agree.

At the post-conviction hearing, counsel testified that he evaluated the evidentiary value of the Petitioner's potential witnesses and determined that it would not be in the Petitioner's best interest to present these witnesses. He believed that the Petitioner's statement adequately presented the Petitioner's theory of self-defense and that the proposed witnesses would not have added anything further. Moreover, their testimony may have opened the door to testimony detrimental to the Petitioner's case. This court

-8-

must be highly deferential to counsel's performance, Burns, 6 S.W.3d at 462, and we will not second-guess the informed tactical decisions of trial counsel. Pylant v. State, 263 S.W.3d 854, 874 (Tenn. 2008) (citing Henley v. State, 960 S.W.2 572, 579 (Tenn. 1997)). The record reflects that counsel adequately prepared for trial and made informed strategic decisions.[4]

Counsel also testified that he reviewed all of the discovery materials in the State's file and was not surprised by the evidence presented at trial. He reviewed the materials with the Petitioner. He could not recall whether he showed the Petitioner the autopsy photographs, but he testified that the photographs were not a "big deal" because the defense never disputed that the Petitioner shot the victim. Although the Petitioner testified that he "probably" would not have proceeded to trial had he seen the photographs prior to trial, in denying relief on this ground, the post-conviction court implicitly accredited the testimony of counsel over that of the Petitioner. We will not reweigh this evidence on appeal. See Vaughn, 202 S.W.3d at 115. Likewise, counsel testified that he never received a plea offer from the State for 13 and a half years, and the Petitioner did not want to accept the State's offer for 15 years. This testimony was bolstered by Muriel Malone, the prosecuting attorney, who testified that her office never made an offer for 13 and a half years. Again, the post-conviction court's denial of relief implicitly accredited the testimony of counsel over that of the Petitioner, and we will not reweigh or reevaluate this evidence on appeal. See id.

In sum, we conclude that the Petitioner has failed to prove that counsel's performance fell below "an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Accordingly, he is not entitled to relief.

---

[4] Because the Petitioner has made an insufficient showing of deficiency, we need not address the issue of prejudice. See Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Nevertheless, we note that the Petitioner failed to present any of these proposed witnesses at the post-conviction hearing. This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn.Crim.App.1990). "'As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.'" Pylant, 263 S.W.3d 854, 869 (Tenn.2008) (quoting Black, 794 S.W.2d at 757). Neither the post-conviction court nor this court may speculate on "what a witness's testimony might have been if introduced by defense counsel." Black, 794 S.W.2d at 757.

## CONCLUSION

Based on the foregoing authority and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE